FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNA L. J., | NO: 1:18-CV-3121-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 17. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Brett E. Eckelberg. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 17, is granted.

## JURISDICTION

Plaintiff Denna L. J.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on May 29, 2014, alleging an onset date of February 10, 2010.[2] Tr. 255-62. Benefits were denied initially, Tr. 152-58, and upon reconsideration, Tr. 161-71. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on May 31, 2017. Tr. 53-88. On July 26, 2017, the ALJ issued an unfavorable decision, Tr.16-30, and on June 8, 2018, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 49 years old at the time of the hearing. Tr. 60. She graduated from high school and attended some trade school for computers and accounting. Tr.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] At the hearing, Plaintiff amended the alleged onset date to March 30, 2011. Tr. 58-59.

60. She has work experience as a cleaner, census taker, crowd manager, caregiver, telemarketer, waitress, nursing assistant, and childcare provider. Tr. 60-62. She testified that when she is stressed or anxious, she "can't think right," loses concentration, and cannot finish tasks. Tr. 63. Being around a lot of people causes her to be anxious and she cannot breathe. Tr. 63-64. Sometimes she has anxiety at home. Tr. 72-73. She has missed work due to depression, although medication helps. Tr. 63, 68. She has breakthrough depression about ten days per month. Tr. 71. When she is depressed, she does not want to see or talk to anyone. Tr. 72.

Plaintiff also testified that she is prevented from working by pain in her back and knee. Tr. 65. If she does more than five or ten minutes of activity, she experiences so much pain that she is "down for days." Tr. 66. She lies down to relieve symptoms three to four times a day for an hour or two at a time. Tr. 74-75.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must

be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the

claimant's age, education and past work experience.  20 C.F.R. §§
404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other
work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is therefore
entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is
capable of performing other work; and (2) such work "exists in significant numbers
in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.
Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful
activity since March 30, 2011, the amended alleged onset date.  Tr. 15.  At step two,
the ALJ found that Plaintiff has the following severe impairments: depressive
disorder; anxiety disorder; PTSD; borderline personality disorder; right knee
degenerative joint disease; lumbar degenerative disk disease; and obesity.  Tr. 18.
At step three, the ALJ found that Plaintiff does not have an impairment or
combination of impairments that meets or medically equals the severity of a listed
impairment.  Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> she can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She needs to avoid exposure to extreme heat, humidity, vibration, and hazards. She can understand, remember, and carry out simple, routine tasks in two-hour intervals. She can have occasional, brief, and superficial contact with coworkers and the public. She cannot work in tandem tasks or in tasks requiring a cooperative team effort.

Tr. 20.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 28. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as production assembler, inspector/hand packager, or collator/operator. Tr. 28-29. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 30, 2011, through the date of the decision. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.     Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.     Whether the ALJ properly considered the medical opinion evidence. ECF No. 12 at 7-24.

## DISCUSSION

## A.     Symptom Claims

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 12 at 16-24.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully persuasive. Tr. 34.

First, the ALJ found Plaintiff's allegations regarding her mental limitations are not generally consistent with the amount of treatment she obtained. Tr. 21. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v); 416.929(c)(3)(iv)-(v) (2011). The ALJ is permitted to consider the claimant=s lack of treatment in

making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, in some cases, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *Id*. Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ noted that despite the mental health symptoms alleged by Plaintiff, she did not start mental health treatment until May 2016, more than five years after her alleged onset date of March 30, 2011. Tr. 21, 802-10. The ALJ observed the before May 2016, Plaintiff made few, if any, complaints of anxiety or other mental health symptoms, despite testimony that she has had anxiety for 10-15 years and missed work and was laid off due to depression. Tr. 20-21 (citing Tr. 385-796); Tr. 63-64. Despite Plaintiff's testimony that she only started treatment for mental symptoms a year prior to the hearing because she could not afford it, Tr. 64, the ALJ noted there is no basis in the record to conclude that a lack of resources or lack of insurance limited Plaintiff's access to mental health treatment.

Plaintiff contends the record supports the assertion that she was prevented from treatment by limited financial resources. ECF No. 12 at 18. Plaintiff cites a record from March 2014 indicating that she was on Medicaid and had previously received DSHS benefits, which does suggest a lack of income. However, it also suggests at least some access to mental health treatment would have been available. ECF No. 12 at 18; Tr. 515. In Dr. Cline's March 2016 report, also cited by Plaintiff, she reported that she was not seeing a counselor but had seen one in the past and found it helpful. Tr. 693. She indicated that she was waiting to "see what happens with my knee" but did not mention a lack of resources in stating that she had not been engaged in counseling in years. ECF No. 12 at 18; Tr. 693. The ALJ's finding is reasonably supported by substantial evidence in the record. In this case, the lack of mental health treatment before 2006 was reasonably considered by the ALJ in evaluating Plaintiff's allegations of mental health limitations.

Second, the ALJ found Plaintiff's alleged mental limitations are not consistent with her reports to providers or her presentation throughout the relevant period. Tr. 21. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ noted Plaintiff's statements to mental health providers are partially consistent

with her allegations as they include complaints of depression, anxiety, poor concentration, anxiety attacks, problems interacting with others, and difficulty leaving her house and completing daily activities due to depression and anxiety. Tr. 21-22 (citing Tr. 902-46), 63-64, 72-74. However, the ALJ observed Plaintiff reported audiovisual hallucinations to mental health providers, which were not mentioned during her testimony. Tr. 22, 63-64, 72-74, 902, 904.

While the ALJ is correct that Plaintiff reported hallucinations during a psychiatric evaluation in July 2016, Tr. 902-04, she subsequently denied hallucinations. Tr. 908-09, 915-16, 922-23, 929-30, 935-36. To the extent the instances cited by the ALJ could be considered an inconsistency between Plaintiff's testimony and the record, the Court concludes it does not rise to the level of a clear and convincing reason for giving less weight to Plaintiff's allegations overall.[3]

However, the ALJ also found that Plaintiff's presentation throughout the treatment record was unremarkable, notwithstanding her testimony and the symptoms she reported to her providers. Tr. 22. The ALJ observed that Plaintiff

---

[3] To the extent this portion of the ALJ's reasoning constituted error, the error was harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson*, 359 F.3d at 1195-97.

presented as cooperative and pleasant, with no significant abnormality in affect, behavior, concentration, memory, mood, psychomotor activity, grooming, hygiene, eye contact, or speech. Tr. 22 (citing Tr. 445-45, 462, 486, 490, 520, 527, 550, 557, 669, 713, 718, 722-23, 728, 816, 819-20, 825, 829-30, 837, 878, 884, 889, 896, 904, 909, 915-16, 923, 930, 936). Although Plaintiff argues these findings do not undermine her testimony regarding "debilitating" symptoms, ECF No. 12 at 17, in this case the ALJ provided detailed evidence supporting that conclusion. Plaintiff contends the ALJ erred by considering treatment records for unrelated conditions that do not specifically address Plaintiff's mental health symptoms. ECF No. 12 at 17. However, Plaintiff's presentation and report in context other than mental health treatment settings is relevant to the consistency of her allegations overall.

The ALJ also found that despite Plaintiff's claim of frequent, severe anxiety and a recurring inability to leave her house, Plaintiff had no significant difficulty interacting with her providers or maintaining her appointment schedule due to her symptoms. Tr. 22 (citing Tr. 520-22, 524-80, 768-96, 813-65, 902-46, 949-60). Plaintiff contends that, contrary to the ALJ's assertion, she missed appointments due to her mental health symptoms. ECF No. 12 at 17. Plaintiff cites two records from July 2016 indicating she missed an appointment because she was sick and canceled a second appointment. ECF No. 12 at 17; Tr. 940, 943. There is no basis in the record to conclude either of these appointments was missed due to mental

health symptoms. Plaintiff also notes a September 2016 record indicating Plaintiff missed an appointment, and when asked about it at her October appointment she stated she "got scared." Tr. 927, 934. The meaning of that statement is not entirely clear from the context, but even if she reported that anxiety prevented her from attending that appointment, this one instance does not undermine the ALJ's conclusion.

Plaintiff also contends the ALJ's finding "disregards the significant differences between engaging in full-time employment and attending medical appointments." ECF No. 12 at 17. Even if a claimant's activities do not demonstrate a claimant can work, they may undermine the claimant's complaints if they suggest the severity of the claimant's limitations were exaggerated. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ's consideration of Plaintiff's interaction with her providers and ability to maintain her appointments was reasonable under the circumstances. The ALJ reasonably concluded this is an inconsistency between Plaintiff's allegations and her presentation to providers which makes her allegations less reliable. Thus, this is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found the objective medical evidence is only partially consistent with Plaintiff's allegations regarding knee and back pain. Tr. 22. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). The ALJ observed that although there are few records showing complaints of chronic back pain, most treatment notes indicate no mention of back pain. Tr. 22 (citing e.g., Tr. 867-91); *see* Tr. 867-71 (complaints of back pain 6/13/16); 873-78 (no back pain mentioned 1/8/16); 879-84 (no back pain mentioned 9/24/15); 885-89 (no back pain mentioned 9/10/15).

Similarly, the ALJ noted Plaintiff made no reports of problems sitting due to knee or back pain, and only once stated that she needed to lie down three to four times per day for one to two hours at a time for knee or back pain. Tr. 22 (citing 385-92, 408-38, 442-88, 524-80, 687-704, 712-23, 731-66, 867-89). The ALJ noted that Plaintiff sometimes affirmatively denied back pain. Tr. 22 (citing e.g., Tr. 429 (review of systems negative except for foot injury), 432 (no known physical impairments), 444 (review of systems negative except for diarrhea, nausea), 449 (denies back pain), 495 (denies back pain), 819 (no complaints of joint pains, no complaints of muscle pain or weakness). Plaintiff argues these records involve exams for conditions other than Plaintiff's back. ECF No. 12 at 18. However, that is precisely their value in evaluating whether Plaintiff's symptom complaints are consistent throughout the record.

Additionally, the ALJ found the only imaging in the record shows no more than mild abnormalities in the spine. Tr. 839-40, and that clinical exams were

largely unremarkable regarding Plaintiff's back.  Tr. 22 (citing Tr. 444-45 (exam findings normal except abdominal tenderness), 461-62 (exam findings normal except left ankle swelling and pain), 486 (exam findings normal except burn on left hand), 490 (exam findings normal except right arm and hand tenderness), 526-27 (musculoskeletal exam normal, except for plantar fasciitis symptoms), 550 (musculoskeletal exam normal), 556-57 (musculoskeletal exam normal), 669 (lumbar spine exam normal except for tenderness, pain with motion, and pain with right straight leg test), 713-14 (exam findings normal except for right knee pain), 717-18 (exam of back showed normal range of motion), 722-23 (exam findings normal except for right knee tenderness), 727-28 (exam findings normal except for right knee tenderness), 815-37 (multiple musculoskeletal exams with normal findings), 878 (exam findings normal except for right knee tenderness), 884 (musculoskeletal exam with normal cervical, thoracic, and lumbar spine findings), 889 (musculoskeletal exam notes only abnormal findings regarding right knee), 896 (back exam included finding of normal inspection and range of motion), 949-60 (exam findings only regarding right ankle)).  Plaintiff contends that "virtually none of the treatment records cited by the ALJ even include examinations of [Plaintiff's] back."  ECF No. 12 at 19.  To the contrary, the ALJ cited multiple records indicating normal musculoskeletal or back findings on exam (Tr. 526-27, 550, 556-57, 717-18, 815-37, 884, 896) and other records showing normal exam findings except for findings related to the current non-back complaint (Tr. 444-45,

461-62, 486, 490, 713-14, 722-23, 727-28, 878, 949-60).  Notably, Plaintiff does

not point to any records demonstrating additional or significant back findings.

With regard to Plaintiff's right knee pain, the ALJ found the level of severity

alleged is not supported by the record.  Tr. 22.  The ALJ observed there is virtually

no mention of knee pain before September 2015, and in fact Plaintiff often denied

knee pain.  Tr. 22 (citing e.g., Tr. 429, 432, 444, 449, 495, 819).  Most exam noted

found no abnormalities in Plaintiff's presentation due to knee pain, back pain, or

other musculoskeletal conditions and Plaintiff usually presented with normal gait,

range of motion, muscle strength, muscle tone, and sensation.  Tr. 22 (citing Tr.

444-45, 461-62, 486, 490, 526-27, 550, 556-57, 669, 815-37).  Significant right

knee pain was first noted in September 2015 and imaging showed only mild

degenerative changes in the knee, but other findings were consistent with a sprain.

Tr. 22, 760, 880-84.

There were no further findings regarding the knee sprain until January 1,

2016, when Plaintiff reported that she had gone dancing the previous night and

slipped on some ice and subsequently experienced knee pain and swelling.  Tr. 23,

746.  Ultimately, Dr. Griffiths diagnosed degenerative joint disease and a meniscal

tear and performed surgery on the right knee in March 2016.  Tr. 23, 775.  In

December 2016, Plaintiff complained of swelling and pain rated at 9 out of 10 in

severity, but Dr. Griffiths found she had pain free range of motion, no effusion,

and normal valgus/varus tests.  Tr. 23, 892-93.  He indicated that even though

Plaintiff reported swelling, he could not see any swelling, and that her history and examination were consistent with mild knee arthritis. Tr. 23, 892-93. The ALJ also noted that at a mental health appointment in December 2016, Plaintiff had "'no reports of pain." Tr. 23, 922.

The ALJ observed that thereafter, Plaintiff did not return to Dr. Griffiths, suggesting that her knee pain was resolved or controlled. Tr. 23. The ALJ also observed that Plaintiff visited the emergency room for a sprained ankle in February 2017 but did not mention knee pain and examination of both knees was normal. Tr. 23, 894-900. In an April 2017 mental health treatment note, Plaintiff denied symptoms of physical pain. Tr. 23, 908. Furthermore, the ALJ noted that Plaintiff never reported she had to lie down several times a day due to pain, nor did any of her treating providers make such a recommendation. Tr. 23. To the contrary, the ALJ noted that long-time treating provider Dr. Jackson recommended that Plaintiff increase her exercise to 45 to 60 minutes of walking daily, five to seven times a week. Tr. 23, 955.

Plaintiff contends the ALJ's characterization of various medical findings and records regarding Plaintiff's knee pain are erroneous, ECF No. 12 at 19-20, but having reviewed the records and the ALJ's findings, the Court concludes the ALJ's interpretation of the evidence regarding Plaintiff's knee problems is accurate and supported by substantial evidence. The ALJ found Plaintiff's allegations regarding physical impairments are inconsistent with her reports to providers, and that her

presentation in the overall record does not support the level of limitation alleged. Tr. 22. The ALJ's interpretation of the evidence is reasonable and supported by the record. This is a clear and convincing reason for giving less weight to Plaintiff's alleged limitations.

Fourth, the ALJ found Plaintiff's activities are not entirely consistent with her allegations. Tr. 23-24. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ gave several examples of activities in the record which are inconsistent with Plaintiff's alleged limitations. Tr. 23-24. The ALJ noted that although Plaintiff alleges anxiety and recurrent panic attacks that are more severe

when she is away from home and around others, she uses public transportation regularly and goes out alone. Tr. 23-24, 66, 291. The ALJ observed that Plaintiff's complaints of anxiety, the need to lie down for several hours every day, and an inability to walk for more than five minutes are contradicted by her testimony that she enjoys taking her grandchildren for walks along a river and that she wades in the river and looks for rocks. Tr. 24, 68, 76. She testified that the walks take about an hour round trip and that she rests about every 15 minutes. Tr. 24, 76. She said she is able to take her grandchildren for such walks because she uses an electric scooter. Tr. 24, 75.

The ALJ found this testimony is inconsistent with Plaintiff's allegations because it would be reasonable to expect uneven or loose surfaces or steep grades near a river. Tr. 24. Furthermore, the ALJ observed that if Plaintiff were using a scooter to go on walks, she would not need to rest every 15 minutes as she testified. Tr. 24. Moreover, the medical record does not reflect that a scooter was prescribed or that she told any provider she uses one. Tr. 24. To the contrary, the ALJ observed Plaintiff's medical providers encouraged her to increase her exercise, including walking. Tr. 24 (citing e.g., Tr. 955). Additionally, the ALJ noted that Plaintiff reported she went out dancing at least once during the relevant period. Tr. 24, 745. The ALJ reasonably found that even though Plaintiff may not have engaged in these activities on a daily basis, they suggest greater ability and

fewer restrictions than alleged. Tr. 24; *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Fifth, the ALJ found Plaintiff's work history is not consistent with her allegations. Tr. 24. The claimant's work record is an appropriate consideration in weighing the claimant's symptom complaints. *Thomas*, 278 F.3d at 958-59. The ALJ observed that in September 2012, Plaintiff stated she worked at the fairgrounds sweeping and in 2015, Plaintiff stated she was looking for work. Tr. 24, 456, 814. Plaintiff testified that her job at the fair was seasonal and she earned about $528, which is less than substantial gainful activity. Tr. 60; Social Security Administration, *Program and Operations Manual System* (POMS) DI 10501.015 (December 28, 2018).[4] Furthermore, Plaintiff's mention that she was "looking for work" does not necessarily indicate that Plaintiff could find or maintain work. As a policy matter, claimants should be encouraged to pursue employment and should not be penalized for trying to do so. The Court concludes that Plaintiff's brief employment and an expression of "looking for work" was not reasonably determined to be inconsistent with Plaintiff's allegations. Although this is not a clear and convincing reason, any error is harmless because the ALJ gave other legally sufficient reasons. *See Carmickle v. Comm'r of Soc. Sec. Admin,* 533 F.3d 1155, 1162 (9th Cir. 2008).

---

[4] *Available at* www.secure.ssa.gov/poms.nsf/lnx/0410501015.

## B.    Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly consider the opinions of treating provider Jason Roberts, ARNP; and examining psychologists N.K. Marks, Ph.D., and R.A. Cline, Psy.D.  ECF No. 12 at 4-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted).  "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[5] The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

### 1. R.A. Cline, Psy.D.

Dr. Cline examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form in March 2016. Tr. 692-97. Dr. Cline

---

[5] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources previously considered to be "other" sources. *See* 20 C.F.R. §§ 404.1520, 416.920 (2017). However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change applies "only with respect to claims filed . . . on or after March 27, 2017"). 20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8) (2017).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

diagnosed borderline personality disorder, PTSD, and major depressive disorder, recurrent, in partial to full remission. Tr. 694. He assessed a marked limitation in the ability to communicate and perform effectively in a work setting and moderate limitations in the ability to learn new tasks, maintain appropriate behavior in a work setting, and in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 695. He opined that Plaintiff "appears capable of at least simple, part time employment." Tr. 695.

The ALJ found that "[a]lthough Dr. Cline did not review any treatment notes and did not provide specific rationale [regarding] each area of limitation," the mild and moderate limitations he assessed "are generally consistent with the overall treatment record." Tr. 27. The ALJ concluded, however, that the marked limitation assessed by Dr. Cline in communicating and performing effectively in a work setting is entitled to less weight. Tr. 27. Because Dr. Cline's opinion regarding communicating and performing effectively in a work setting was contradicted by the opinions of Renee Eisenhauer, Ph.D., Tr. 112-14, and Dan Donahue, Ph.D., Tr. 142-44, the ALJ was required to provide specific and legitimate reasons for rejecting that portion of Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that the overall treatment record is inconsistent with Dr. Cline's opinion that Plaintiff would have a marked limitation in communicating and performing effectively in a work setting. Tr. 27. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical

opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ noted that the longitudinal record indicates Plaintiff consistently presented as cooperative and pleasant with no significant abnormality in affect, behavior, psychomotor activity, eye contact, or speech. Tr. 27 (citing Tr. 445-45, 462, 486, 490, 520, 527, 550, 557, 669, 713, 718, 722-23, 728, 816, 819-20, 825, 829-30, 837, 878, 884, 889, 896, 904, 909, 915-16, 923, 930, 936). Contrary to Plaintiff's assertion, these records reasonably speak to Plaintiff's ability to communicate and interact. ECF No. 12 at 12. Plaintiff asserts that, for example, one record cited by the ALJ states only that Plaintiff was "alert and awake" and "oriented to time and space," and does not speak to the marked limitation assessed by Dr. Cline. ECF No. 12 at 12 (citing Tr. 820). However, that record actually notes that Plaintiff complained of depression but was "very pleasant," "cheerful," and was well disposed with a normal affect, no agitation, anxiety or depression on exam. Tr. 27, 819-20. The ALJ also observed that the record reflects Plaintiff rarely had difficulty interacting with providers or that she missed or cancelled appointments due to her alleged anxiety and depression. Tr. 27 (citing Tr. 520-22, 524-80, 768-96, 813-65, 902-46, 949-60).

Second, the ALJ found that Dr. Cline did not provide a specific rationale for the marked limitation assessed. Tr. 27. The quality of the explanation provided in a medical opinion is a factor relevant in evaluating the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c) ; *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631; *see*

*also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (indicating opinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions may accorded little or no weight). Indeed, Dr. Cline did not include an explanation for the marked limitation and none of the findings in the report reasonably explain the degree of limitation assessed. A "marked" limitation is defined as "a very significant limitation," Tr. 694, yet Dr. Cline indicated Plaintiff's speech was within normal limits and she was cooperative for the most part, although she was rather dramatic and appeared to be scowling during the interview. Tr. 696. Without an explanation or findings supporting the marked limitation, the ALJ reasonably rejected it.

Plaintiff contends "an ALJ cannot reject a medical source opinion simply because that opinion does not include a 'specific rationale' for the limitations assessed." ECF No. 12 at 13 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *Garrison*, 759 F.3d at 1013). [6] Plaintiff erroneously interprets *Burrell*, which actually provides that, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." 775 F.3d at 1140 (quoting *Batson v. Comm'r of Soc. Sec.*

---

[6] Plaintiff also cites *Popa v. Berryhill*, 868 F.3d 764, 770 (9th Cir. 2017), ECF No. 12 at 13, which has been withdrawn from publication, amended and superseded. *See also* ECF No. 12 at 5.

1  *Admin.,* 359 F.3d 1190, 1195 (9th Cir.2004)).  Nor does *Garrison* support

2  Plaintiff's argument, as it states "an ALJ errs when he rejects a medical opinion or

3  assigns it little weight while doing nothing more than ignoring it, asserting without

4  explanation that another medical opinion is more persuasive, or criticizing it with

5  boilerplate language that fails to offer a substantive basis for his conclusion."  759

6  F.3d at 1012–13.  The ALJ made none of the errors mentioned in *Garrison*, and the

7  case is not applicable here.

8      Third, the ALJ found that Dr. Cline's narrative discussion contradicts the

9  marked limitation in communicating and performing effectively in a work setting.

10  Tr. 27.  A medical opinion may be rejected by the ALJ if it contains

11  inconsistencies.  *Bray*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Despite assessing a

12  marked limitation in the ability to communicate and perform effectively at work,

13  Dr. Cline's narrative explanation indicates that Plaintiff is capable of at least

14  simple, part time employment.  Tr. 27, 695.  Dr. Cline further opined that although

15  Plaintiff's personality traits "may prove prob[le]matic when it comes to

16  maintaining employment and interacting with others, but this alone is not sufficient

17  to prevent her from working."  Tr. 695.  Although Plaintiff argues this is not a

18  contradiction, ECF No. 12 at 15, the ALJ's analysis is reasonable since a marked

19  limitation in this area is typically inconsistent with the ability to work, yet Dr.

20  Cline specifically indicated her problems interacting with others would not prevent

21

her from working.[7]  Tr. 695.   This is a specific, legitimate reason for rejecting the marked limitation.

   2.  *N.K. Marks, Ph.D.*

   Dr. Marks examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form in March 2014.  Tr. 508-11.   She diagnosed depressive disorder and anxiety disorder and assessed marked limitations in the ability to ask simple questions or request assistance; to communicate and perform effectively in a work setting; and to set goals and plan independently, as well as moderate limitations in seven other functional areas.  Tr. 509-510.

   The ALJ gave less weight to Dr. Marks' opinion.  Tr. 27.  Because Dr. Marks' opinion was contradicted by the opinions of Dr. Eisenhauer and Dr. Donahue, Tr. 112-14, 142-44, the ALJ was required to provide specific and legitimate reasons for rejecting that portion of Dr. Marks' opinion.  *Bayliss*, 427 F.3d at 1216.

   First, the ALJ found Dr. Marks' opinion is inconsistent with the longitudinal record.  Tr. 27.  As discussed *supra*, the consistency of a medical opinion with the longitudinal record is a relevant factor in considering that opinion.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  The ALJ again noted that Plaintiff consistently

---

[7] Individual medical opinions are preferred over check-box reports.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).

presented as cooperative and pleasant, with no significant abnormality in affect, behavior, psychomotor activity, eye contact, or speech. Tr. 27 (citing Tr. 445-45, 462, 486, 490, 520, 527, 550, 557, 669, 713, 718, 722-23, 728, 816, 819-20, 825, 829-30, 837, 878, 884, 889, 896, 904, 909, 915-16, 923, 930, 936). The ALJ reasonably determined that the limitations assessed by Dr. Marks are inconsistent with such findings in the overall record. This is a specific, legitimate reason for rejecting Dr. Marks' opinion.

Second, the ALJ found Dr. Marks did not provide a specific rationale or objective findings to substantiate the limitations assessed. Tr. 27. As discussed *supra*, this is a specific, legitimate reason for giving less weight to a medical opinion. The ALJ observed the mental status exam findings reported by Dr. Marks were largely within normal limits, Tr. 27, 511, reasonably suggesting the limitations assessed exceed those findings. Indeed, Dr. Marks found Plaintiff to be cooperative and pleasant and her thought process and content, orientation, perception, memory, concentration, abstract thought, and insight and judgment were within normal limits. Tr. 511.

Plaintiff contends that her scores in the "severely anxious" range on the Beck Anxiety Inventory and in the moderate range on the Beck Depression Inventory support Dr. Marks' opinion. ECF No. 12 at 14. However, consistent with the ALJ's finding, there is no indication in the opinion how those ratings translate into the limitations assessed by Dr. Marks. It is the ALJ's duty to resolve conflicts and

ambiguity in the medical and non-medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's reasons for rejecting Dr. Marks' opinion are specific, legitimate, and supported by substantial evidence.

### 3.  Jason Roberts, ARNP

In March 2014, Mr. Roberts completed a DSHS Physical Functional Evaluation form and noted diagnoses of lumbago/sciatica and morbid obesity.  Tr. 512-14.  He opined Plaintiff is limited to sedentary work and recommended an independent medical exam and an MRI of the lumbar spine.  Tr. 514.

The ALJ gave less weight to Mr. Roberts' opinion that Plaintiff is limited to sedentary work due to back pain.  Tr. 25.  As an ARNP, Mr. Roberts is an "other source" under the regulations.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).  Thus, the ALJ was required to cite germane reasons for rejecting the opinion.  *See Molina*, 674 F.3d at 1104.

First, the ALJ found Mr. Roberts did not provide a completed evaluation with objective findings consistent with the level of limitations in the opinion.  Tr. 25.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).  The ALJ observed Mr. Roberts' findings were "mostly

unremarkable," and noted normal gait, range of motion, muscle strength, stability reflexes, and sensation on examination. Tr. 25-26 (citing Tr. 518).

Plaintiff contends the ALJ overlooked the lumbar spine evaluation completed by Mr. Roberts, which noted Plaintiff's normal gait; paraspinous lumbar tenderness; pain with motion; no pain in the left or right greater trochanter, buttock, and SI joint; normal left straight leg raises; and back pain only with right straight leg raises. Tr. 518. Mr. Roberts also found Plaintiff's lumbar active range of motion was normal "with limiting factors of pain." Tr. 518. These findings were reasonably categorized by as "mostly" unremarkable as they do not demonstrate or support any particular limitation. Even if the ALJ should not have called the lumbar spine findings "unremarkable," Mr. Roberts advised an MRI of the lumbar spine. Tr. 518. The ALJ noted an MRI of Plaintiff's spine from April 2014 found only mild degenerative disc disease at the lumbosacral disc. Tr. 22, 840. Thus, this supports the conclusion that Mr. Roberts findings do not support the degree of limitation assessed due to back pain.

Second, the ALJ found Mr. Roberts' opinion is inconsistent with the overall treatment record. Tr. 26. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. The ALJ determined that the record overall indicates only mild spine abnormalities on imaging and few abnormal clinical findings. Tr. 26. As discussed *supra*, the ALJ thoroughly reviewed the

record regarding Plaintiff's back pain.  *See* Tr. 22.  The ALJ reasonably found Mr. Roberts' opinion is inconsistent with the degree of limitation otherwise supported by the record.  This is a germane reason for rejecting the opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** July 9, 2019.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge